UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHYLLIS SPIVA-JACKSON, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:04CV470 JCH |
| ) | |
| ) | |
| JOHN E. POTTER, ) | |
| POSTMASTER GENERAL, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Motion to Dismiss" or "Defendant's Motion for Summary Judgment"), filed August 29, 2005. (Doc. No. 19). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, the Postal Service maintains two separate and distinct programs for employees who are unable to perform the essential functions of their position due to a medical condition, whether temporary or permanent. (Defendant Postmaster General John E. Potter's Statement of Uncontroverted Facts in Support of his Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Facts"), ¶ 1). The first program, known as limited duty, covers employees who sustain a work-related injury. (Id.). The second, known as light duty, applies to individuals who suffer from non-work-related medical impairments. (Id.). Because the limited and light duty programs arise under different statutory schemes, each program imposes different obligations and responsibilities on the Postal Service. (Id., citing Spirk Declaration, Exh. A).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Limited duty arises from and is governed by the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101. (Defendant's Facts, ¶ 2). FECA imposes responsibilities on both the employee and the employing agency to find alternative suitable employment for any employee who cannot perform the duties of her position. (Id.). Specifically, FECA requires the employer to attempt to make accommodations to the employee's regular job, and if that fails, either to create and offer an entirely new job with the agency, or to pay the employee who is not working. (Id., ¶ 3, citing Exh. A).

By way of contrast, the light duty program is governed by the applicable collective bargaining agreement ("CBA"). (Defendant's Facts, ¶ 4). Pursuant to the CBA, light duty is provided to employees with non-work-related conditions if work is available, but the Postal Service does not have an obligation to create a position for a person requesting a light duty assignment. (Id., citing Exh. A). Limited duty tour hours are set by the bid assignment, whereas light duty hours are set by the mail volume. (Id., ¶ 6, citing Exh. A).

During the period of time at issue in this case, light duty employees at the St. Louis Processing and Distribution Center who could not handle a major portion of their bid assignments were assigned to mail prep. (Defendant's Facts, ¶ 7). The policy was to start those employees in the mail prep area at 7:00 p.m., as that is when there was sufficient mail volume to support them. (Id., citing Alford EEO Investigative Affidavit, Exh. B; Evans EEO Investigative Affidavit, Exh. C).

Plaintiff Phyllis Spiva-Jackson began working for the Postal Service in June, 1998, as a part-time Mailhandler. (Defendant's Facts, ¶ 8, citing Plaintiff's Deposition, Exh. F, P. 11). Plaintiff's work as a Mailhandler involved lifting tubs and placing them in cages, lifting sacks and taking cages from the elevators to the truck, and pushing trucks. (Id., ¶ 9, citing Exh. F, PP. 11, 12).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff filed a workers' compensation claim alleging that on March 8, 1999, a cage gate allegedly fell and hit her left shoulder while she was at work. (Defendant's Facts, ¶ 10, citing Exh. F, PP. 12, 13; Form CA-1, Exh. G; Exh. A). Plaintiff's workers' compensation claim was approved by the Department of Labor, Office of Workers' Compensation (the "OWCP"), and so the Postal Service provided her with a limited duty assignment within her restrictions. (Id., ¶ 11, citing Exh. F, PP. 16, 17; June 29, 1999 OWCP Decision, Exh. H; Exh. A). While on limited duty status, Plaintiff became a full-time Postal Service employee on August 12, 2000. (Id., ¶ 12, citing Exh. F, P. 18; August 8, 2000 Dolde letter to Plaintiff, Exh. I).

On April 17, 2000, upon request from the OWCP, Dr. Michael C. Chabot, a board certified orthopedic surgeon, examined Plaintiff, to determine if her alleged symptoms at that time were related to her prior job-related injury. (Defendant's Facts, ¶ 13). Dr. Chabot found that they were not, and further concluded that Plaintiff was capable of returning to her regular duties. (Id., citing March 22, 2000 OWCP letter to Plaintiff, Exh. J; April 20, 2001 OWCP Decision, Exh. K). The OWCP therefore denied Plaintiff's request for a surgical procedure. (Id., ¶ 14, citing Exh. K). As a result of the OWCP's determination, Plaintiff was no longer in a limited duty status. (Id., ¶ 16, citing Exh. A).

After the decision by the OWCP, Plaintiff continued to maintain she was unable to perform her regular duties. (Defendant's Facts, ¶ 17). She therefore was placed on light duty, and not required to return to her regular job assignment. (Id., citing Exh. F, PP. 21, 23, 24, 33, 34; Exh. B; Exh. C). On June 12, 2001, Supervisor Elijah Alford presented Plaintiff with a light duty assignment in mail prep, with duty hours of 7:00 p.m. to 3:30 a.m. (Id., ¶ 18, citing Exh. F, PP. 27, 28; Exh. B;

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Light Duty Position Form, Exh. LL).[1] Plaintiff informed Supervisor Alford she was not going to come in at 7:00 p.m., and refused to sign the light duty position form. (Id., ¶ 20, citing Exh. B; Exh. F, P. 25; Exh. LL). Plaintiff never again reported for work after the date on which she was offered the light duty assignment. (Id., ¶ 21, citing Exh. F, P. 43).

Between October 9, 2001, and June 4, 2002, Plaintiff was issued several Letters of Warning, for "Failure to be Regular in Attendance–AWOL." (Defendant's Facts, ¶¶ 22, 26, 31). Plaintiff was instructed on several occasions to submit medical documentation to cover her absence. (Id., ¶¶ 22, 24, 25, 27, 32, 34). She further was issued a number of 14-day suspensions, also for "Failure to be Regular in Attendance–AWOL." (Id., ¶¶ 23, 29, 33). Plaintiff did not return to work or submit documentation in response to any of the letters that were sent to her. (Id., ¶ 35). On July 1, 2002, Plaintiff was issued a Notice of Removal, charging her with "Failure to Maintain a Regular Work Schedule (AWOL)", on the basis that she was absent from duty and did not properly certify the reason for her absence. (Id., ¶ 36, citing Notice of Removal, Exh. Y).

Plaintiff initiated EEO contact on June 6, 2001, and completed an Information for Pre-Complaint Counseling form alleging sex and physical disability discrimination on June 8, 2001. (Defendant's Facts, ¶ 37). Specifically, Plaintiff alleged Defendant discriminated against her by changing her status from limited duty to light duty, and by changing her duty hours from 3:00 p.m.-11:30 p.m., to 7:00 p.m.-3:30 a.m. (Id., citing Information for Precomplaint Counseling Form, Exh. Z; Harris Declaration, Exh. E). On July 25, 2001, Plaintiff completed her formal EEO Complaint

---

[1] Although the light duty assignment presented to Plaintiff inadvertently was typed on a limited duty worksheet, Plaintiff testified she understood it was a light duty assignment. (Defendant's Facts, ¶ 19, citing Exh. F, P. 28).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

form, in which she alleged discrimination on the bases of race, sex and disability. (Id., ¶ 38, citing EEO Complaint of Discrimination, Exh. AA).[2]

On November 19, 2001, the Postal Service's EEO Compliance and Appeals Unit accepted the following issue for investigation: "Specific Issue–Notified that her status would change from limited duty to light duty and her duty hours would change from 3:00 P.M.-11:30 P.M. to 7:00 P.M-3:30 A.M., while a black male employee on light duty did not have his hours changed; Date of Incident–June 6, 2001; Types of Discrimination Alleged–race (black), sex (female) and physical disability (left shoulder, hand)." (Defendant's Facts, ¶ 39, citing Acceptance Letter, Exh. BB). On January 20, 2004, EEOC Judge Andrea Niehoff issued Findings of Fact and Conclusions of Law, without a hearing. (Id., ¶ 40). Judge Niehoff found that Plaintiff failed to establish a *prima facie* case of discrimination. (Id., citing EEOC Decision, Exh. CC). On January 26, 2004, the Postal Service issued a Notice of Final Action adopting Judge Niehoff's decision, and providing Plaintiff with the right to file an action in federal court. (Id., ¶ 41, citing Notice of Final Action, Exh. DD).

Plaintiff filed the instant suit on April 20, 2004. (Doc. No. 1). In her Complaint, Plaintiff alleges unlawful discrimination on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). (Id., P. 3).[3] Specifically, Plaintiff claims she was discriminated against when she was changed from limited duty to light duty status, with a consequent change in duty hours, and when her employment subsequently was terminated in August, 2002. As stated above, Defendant filed the instant Motion to Dismiss or, in the Alternative, for Summary

---

[2] Plaintiff did not include a claim of discriminatory termination in her EEO Complaint, as at the time of filing she had not yet been fired from the Postal Service.

[3] Plaintiff does not claim disability or race discrimination in her Complaint.

- 5 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Judgment, on August 29, 2005, alleging there are no material facts in dispute, and Defendant is entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 19).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Motion To Dismiss

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In his Motion to Dismiss, Defendant maintains Plaintiff's claims regarding her termination must be dismissed, for failure to exhaust administrative remedies. (Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Memo in Support"), P. 7). Specifically, Defendant notes the regulations governing the administrative complaint process require complaints of discrimination to be brought to the attention of an EEO Counselor within forty-five (45) days of the date of the matter alleged to be discriminatory, or within forty-five (45) days of the effective date of the personnel action in question. (Id., P. 8, citing 29 C.F.R. § 1614.105(a)(1)). Defendant asserts Plaintiff failed to comply with this regulation with respect to her termination, as at the time she contacted the Postal Service's EEO office, she had not yet been removed from the Service, and would not be removed until approximately a year later. (Id.). According to Defendant, pursuant to the regulations Plaintiff had forty-five days from the date of her removal to make EEO contact, and because she failed to do so, her claims regarding the termination must be dismissed. (Id.; see also Defendant's Facts, ¶ 43, citing Exh. E).

Upon consideration, the Court agrees Plaintiff has failed to exhaust her administrative remedies with respect to claims regarding her termination from the Postal Service. The Court therefore will grant Defendant's Motion to Dismiss with respect to these claims.

## II.  Motion For Summary Judgment[4]

As stated above, in her Complaint Plaintiff alleges unlawful discrimination on the basis of gender, in violation of Title VII. (Doc. No. 1). Because she lacks direct evidence of discrimination, Plaintiff's Title VII claim is analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973);

---

[4] Because the Court has considered matters outside the pleadings, it will treat the remainder of Defendant's motion as one for summary judgment.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005) (citations omitted). Under this framework, Plaintiff has the initial burden of establishing a *prima facie* case of discrimination. Kratzer, 398 F.3d at 1046 (citation omitted). If Plaintiff is successful in establishing the *prima facie* case, a rebuttable presumption of discrimination arises; the burden then shifts to Defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. (citation omitted). Once Defendant articulates such a reason, the presumption of discrimination disappears, and Plaintiff must prove that Defendant's proffered reason is merely a pretext for discrimination. Id. (citations omitted).

In order to present a *prima facie* case of gender discrimination, Plaintiff must show: "(1) that [s]he is a member of a protected class, (2) that [s]he was meeting the employer's legitimate job expectations, (3) that [s]he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004), citing Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000). Upon consideration, the Court finds Plaintiff fails to meet her burden of establishing element four of her *prima facie* case of discrimination; in other words, she fails to present evidence that similarly situated employees outside the protected class were treated more favorably. Under Eighth Circuit law, "[t]he test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." E.E.O.C. v. Kohler Co., 335 F.3d 766, 775 (8th Cir. 2003), quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Cherry v. Ritenour School Dist., 361 F.3d 474, 479 (8th Cir. 2004) (internal quotations and citation omitted). Further, Plaintiff has the burden of demonstrating by a preponderance of the evidence that there exist

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

individuals similarly situated in all relevant respects, and unsubstantiated allegations are insufficient. Cherry, 361 F.3d at 479 (citation omitted).

In her deposition, Plaintiff identified the following employees who she claimed were similarly situated: Anthony McNeal, Gerry Lewis, William Harris, Charles Randall, Ronald Babcock, and Richard Spengemann. (Defendant's Facts, ¶ 46, citing Exh. F, PP. 30, 31). Upon review, the Court finds none of the listed employees was similarly situated to Plaintiff. For example, Anthony McNeal was a full-time mail processing machine operator, who was on light duty with the following restrictions: 20 lb. lifting; standing/walking 4 hrs/day; sitting 4 hrs/day; no climbing, stooping, kneeling or repeated bending; no overtime. (Id., ¶ 47, citing McNeal Restriction/Assignment Paperwork, Exh. EE). Thus, Mr. McNeal was not similarly situated to Plaintiff in all relevant respects, as he was capable of performing his assigned duties for the first four hours of his tour, despite his restrictions. (Id., ¶ 48, citing Exh. EE; Exh. B; see also Cherry, 361 F.3d at 479). The fact that his work hours were not changed thus is irrelevant to Plaintiff's claim of discrimination.[5]

With respect to Gerry Lewis, Defendant asserts he was a full-time mailhandler equipment operator, who was on limited duty rather than light duty. (Defendant's Facts, ¶ 51, citing Lewis Restriction/Assignment Paperwork, Exh. FF; Exh. B). Plaintiff does not dispute that because Mr. Lewis was injured on-the-job, and thus placed on limited duty, his hours would not change. (Id., ¶ 52, citing Exh. F, P. 34). Plaintiff thus fails to demonstrate that Mr. Lewis was similarly situated in all relevant respects. See Cherry, 361 F.3d at 479.

---

[5] Plaintiff makes much of the fact that Mr. McNeal allegedly was permitted to continue working without signing a light duty form, while she was "put off clock" for refusing to do so. (Plaintiff Phyllis Spiva-Jackson's Statement of Uncontroverted Facts in Support of her Motion to Continue Civil Action, ¶ 2). Defendant submits evidence, however, in the form of Mr. McNeal's Restriction/Assignment Paperwork, that shows Mr. McNeal did in fact sign light duty assignment sheets on January 31, 2001, March 27, 2001, April 9, 2001, May 7, 2001, and July 3, 2001. (Defendant's Facts, ¶ 50, citing Exh. EE).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

With respect to the rest of Plaintiff's alleged comparators, the imposed restrictions were as follows: William Harris–no overtime, two consecutive days off; Charles Randall–10 lb. lifting, no overtime, two consecutive days off; Ronald Babcock–15 lb. lifting, no prolonged standing; and Richard Spengemann–no overtime, two consecutive days off. (Defendant's Facts, ¶¶ 53-56, citing Harris, Randall, Babcock and Spengemann Restriction/Assignment Paperwork, Exhs. GG, HH, II, JJ; Exh. B; Exh. C). Each of these men was capable of performing his assigned duties within his restrictions (Defendant's Facts, ¶¶ 53-56), and thus they were not similarly situated to Plaintiff in all relevant respects.

Based on the foregoing, the Court finds Plaintiff has failed to identify any employee whose situation was comparable to Plaintiff's, and who was treated differently than she was with respect to status and/or schedule changes. Plaintiff thus fails to establish a *prima facie* case of gender discrimination, and so Defendant's Motion for Summary Judgment must be granted.[6]

## **CONCLUSION**

Accordingly,

---

[6] In light of the above ruling, the Court need not consider steps two and three of the McDonnell Douglas test. The Court notes, however, that Defendant clearly has articulated a legitimate, non-discriminatory reason for its action. Specifically, as noted above, the OWCP denied Plaintiff's claim for continuing impairment from her work injury, and concluded that she was able to return to her normal duties. Plaintiff thus was precluded from maintaining limited duty status. When Plaintiff continued to insist she could not perform her regular duties, however, Defendant made a legitimate, non-discriminatory decision to place her in light duty status. With respect to pretext, the Eighth Circuit has held that, "[p]robably the most commonly employed method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different....sex received more favorable treatment." Cherry, 361 F.3d at 479 (internal quotations and citations omitted). Thus, under the above reasoning, Plaintiff is unable to demonstrate Defendant's proffered explanation was merely a pretext for discrimination.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 19) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 2nd day of November, 2005.

/s/ Jean C. Hamiton
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com